PEOPLE v BAKER

Docket Nos. 45987, 49885. Submitted December 3, 1981, at Lansing.—
Decided April 5, 1982.

Archie Baker was convicted of third-degree criminal sexual con-
duct in Washtenaw Circuit Court, Ernest C. Boehm, J. Subse-
quently, the defendant was convicted of being a fourth-time
felony offender, Patrick J. Conlin, J. The defendant appeals
both cases which were consolidated by the Court of Appeals.
The defendant alleged that: (1) the procedures used in a wit-
ness's identification of him denied him his due process rights;
(2) he was denied his due process rights because of the process
used by the victim in identifying him; (3) the trial court erred
in admitting evidence of similar acts of the defendant; (4) the
trial court erred in admitting into evidence the results of
serological tests; and (5) his conviction of being an habitual
offender should be reversed because the prosecuting attorney
improperly filed a supplemental information charging the de-
fendant with being an habitual offender five days after his
conviction for criminal sexual conduct when the prosecuting
attorney knew of the defendant's felony record prior to the
conviction upon which the habitual offender charge was based.
*Held:*

1. The procedures used in the identification by the witness of
the defendant in a photographic showup and two lineups were
not improper. The showup was not suggestive. The procedures
employed in the lineups were not improper or suggestive.
Although the witness had difficulty identifying the defendant in

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 737.
    29 Am Jur 2d, Evidence §§ 371-373.
    Admissibility of evidence as to extrajudicial or pretrial identifica-
    tion of accused. 71 ALR2d 449.
[2, 3] 29 Am Jur 2d, Evidence § 320 *et seq.*
    Admissibility at trial of criminal case, of evidence of defendant's
    criminal acts other than those charged—Supreme Court cases. 93
    L Ed 184.
[4] 21A Am Jur 2d, Criminal Law § 849 *et seq.*
    39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 17.5.

the first lineup, this can be attributed to the defendant's attempt to alter his appearance.

2. The defendant was not prejudiced by the victim's identification of the defendant. There were three light-skinned black people in the lineup. There was no evidence that the victim based her identification solely on skin color. The victim testified that she saw the assailant's face for about three minutes and had a good look at him during the assault.

3. The trial court did not err in admitting evidence of similar acts of the defendant. The witness who testified regarding a similar assault on her committed by the defendant and the testimony of the victim indicated distinguishing, peculiar and special characteristics which tended to establish that the defendant committed both sexual assaults. Further, the defendant's identity was "in issue" so the evidence was probative for that purpose. Identity may be established by evidence of similar acts, particularly where the defense is alibi. The probative value of the evidence outweighed its prejudicial effect.

4. There was no error in the admission of the serological evidence. The defendant did not object to the testimony during the trial which indicated that the person who assaulted the victim was a blood type B secretor and that the defendant was a blood type B secretor. Thus, the issue is not preserved on appeal absent a showing of manifest injustice. Any error in admitting the serological evidence would be harmless since there was a positive identification of the defendant by the complainant and evidence of the victim's opportunity to observe the defendant.

5. The case law establishing the requirement that a prosecutor must proceed promptly, if at all, against a defendant as an habitual offender applies to cases which were on appeal on August 28, 1979, and all cases in which the original trial was concluded or a guilty plea was taken more than 20 days after August 28, 1979. Here, the defendant was convicted of criminal sexual conduct on April 20, 1979. The above rule does not apply to this case.

Affirmed.

1. CRIMINAL LAW — PRETRIAL IDENTIFICATION — APPEAL.

The Court of Appeals in determining the admissibility of evidence of a pretrial identification of a defendant should review the totality of the circumstances surrounding the pretrial identification and whether the procedures used were so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.

2. Evidence — Similar Acts — Rules of Evidence.

   The following factors must be established before evidence of
   similar acts of a defendant in a criminal case is admitted: (1)
   there must be substantial evidence that the defendant commit-
   ted the other acts; (2) the evidence must be probative of one of
   the purposes specified in the Michigan Rule of Evidence regard-
   ing similar acts; (3) that purpose must be "in issue" in the case;
   and (4) the probative value of the evidence is not substantially
   outweighed by its prejudicial effect (MRE 404[b]).

3. Evidence — Identity — Similar Acts.

   Identity of a defendant may properly be established in a criminal
   case by evidence of similar acts of the defendant, particularly
   where the defense is alibi.

4. Criminal Law — Habitual Offenders.

   The case law establishing a requirement that a prosecutor must
   proceed promptly, if at all, against a defendant as an habitual
   offender applies to cases which were on appeal on August 28,
   1979, and all cases in which the original trial was concluded or
   guilty plea was taken more than 20 days after August 28, 1979.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William F. Delhey,* Pros-
ecuting Attorney, and *David A. King,* Assistant
Prosecuting Attorney, for the people.

*Wm. Douglas Winters,* for defendant on appeal.

Before: V. J. Brennan, P.J., and Allen and
T. C. Megargle,* JJ.

V. J. Brennan, P.J. On April 23, 1979, defen-
dant was convicted by a jury of third-degree crimi-
nal sexual conduct, MCL 750.520d(1)(b); MSA
28.788(4)(1)(b), for an assault on Catherine Bauer
in Ann Arbor on April 11, 1978. He was sentenced
to a prison term of from 10 to 15 years. On
October 2, 1979, defendant was convicted by an-
other jury as a fourth-time felony offender pursu-
ant to MCL 769.12; MSA 28.1084, and MCL 769.13;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 18.1085. Subsequently, defendant's sentence for third-degree criminal sexual conduct was vacated and he was sentenced to imprisonment for 60 to 90 years as a fourth-time felony offender. Defendant appeals both convictions as of right.

Defendant was involved in several sexual assaults on hotel maids in 1978, for which he was convicted. In the instant case, he was convicted of sexually assaulting Catherine Bauer in Ann Arbor on April 11, 1978. Prior to this conviction, he was convicted of first-degree criminal sexual conduct for an assault on Cynthia McKinley in Howell on June 24, 1978; see *People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981). He was also convicted of first-degree criminal sexual conduct and second-degree criminal sexual conduct for assaults on Diane Lachowski in Troy; see *People v Baker #1,* 103 Mich App 255; 303 NW2d 14 (1981). In addition, he was convicted of first-degree criminal sexual conduct for an assault on Karen Wolfe in Ann Arbor on August 30, 1978; appeal pending, Court of Appeals docket no. 46129.

Defendant first claims that he was denied due process by the procedures employed in Cynthia McKinley's identification of him. Ms. McKinley was a witness who testified regarding similar acts of defendant and participated in a photographic showup and two lineups. The trial court conducted a *Wade* hearing[1] and found that the showup and lineups were not improper or suggestive.

An appellate court reviews a lower court's determination following a *Wade* hearing by reviewing the totality of the circumstances surrounding the pretrial identification and determining whether those procedures were so impermissibly suggestive

---

[1] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

as to give rise to the substantial likelihood of misidentification. *People v Dean,* 110 Mich App 751; 313 NW2d 100 (1981).

We find no error on the part of the trial court. The photographic showup was not suggestive even though the police asked Ms. McKinley if her assailant had green eyes. The photographs were all black and white and there was no way to discern eye color. Furthermore, several months prior to the photographic showup, Ms. McKinley told the police that her assailant had "weird" eyes.

Also, we find that the procedures employed in the lineups were not improper or suggestive. Although Ms. McKinley had difficulty identifying the defendant at the first lineup, this was attributable to defendant's attempt to alter his appearance by changing his hair style from an Afro to pigtails and by shaving off his mustache, goatee and eyebrows. At the second lineup, Ms. McKinley immediately identified the defendant from a group of men selected by defense counsel. Consequently, we find that no error occurred.

Defendant's second claim of error is that the procedures employed in Catherine Bauer's identification of him denied him due process because she based her identification on defendant's light skin color. The trial court found that there were three light-skinned black people in the lineup, and, therefore, defendant was not prejudiced. Also, Ms. Bauer testified that she saw the defendant's face for about three minutes and had a good look at him during the assault. There was no evidence or testimony presented that she based her identification strictly on skin color or that the procedures employed were suggestive or improper. Thus, we find no error on the part of the trial court.

Next, defendant claims that the trial court erred

in admitting evidence of similar acts of the defendant.

Before evidence of similar acts can be admitted, (1) there must be substantial evidence that the defendant committed the other acts, (2) the evidence must be probative of one of the purposes specified in MRE 404(b), and (3) that purpose must be "in issue" in the case. *People v Major,* 407 Mich 394, 400; 285 NW2d 660 (1979), *People v Wagner,* 104 Mich App 169, 178; 304 NW2d 517 (1981). Even if the evidence is otherwise admissible, the trial court must still determine if the probative value of the evidence is substantially outweighed by its prejudicial effect. *People v Oliphant,* 399 Mich 472, 489-490; 250 NW2d 443 (1976).

Ms. McKinley and the complainant, Ms. Bauer, testified regarding the assaults on them. After reviewing their testimony, we are convinced that there were distinguishing, peculiar and special characteristics which tended to establish that the defendant committed both sexual assaults. See *People v Baker #2, supra.* Further, the defendant's identity was "in issue" so the evidence was probative of that purpose. Identity may be established by evidence of similar acts, particularly where the defense is alibi. *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971), *People v Oliphant, supra.* Moreover, the probative value of the evidence outweighed its prejudicial effect. There was no error in admitting the evidence.

Also, defendant claims that the trial court erred in admitting into evidence the results of serological tests. There was evidence presented at the trial that the person who assaulted Catherine Bauer was a blood type B secretor and that defendant was a blood type B secretor. The defendant did not object to the testimony. Thus, this issue is not

properly before this Court absent a showing of manifest injustice. *People v Sommerville,* 100 Mich App 470, 489; 299 NW2d 387 (1980).

Several panels of this Court have split on the admissibility of serological evidence used to include a defendant in a class of possible assailants. *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979), *People v Spencer,* 93 Mich App 605; 286 NW2d 879 (1979), *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), *People v Sommerville, supra, People v White,* 102 Mich App 156; 301 NW2d 837 (1980), *People v Allen,* 104 Mich App 48; 304 NW2d 483 (1981), *People v Collier,* 105 Mich App 46; 306 NW2d 387 (1981), *People v Young,* 106 Mich App 323; 308 NW2d 194 (1981), *People v Camon,* 110 Mich App 474; 313 NW2d 322 (1981). In *People v Sturdivant, supra,* this Court found that the admission of blood-type evidence for the purpose of including the defendant in a class of possible perpetrators of the crime is error. Without discussing the admissibility of the evidence, we find that there was no manifest injustice to the defendant. In *People v White, supra,* the Court found that the rule announced in *Sturdivant* was not retroactive. Since the trial in *White* predated the decision in *Sturdivant,* and prior to that time implicit approval had been given to blood-type testimony, the Court determined that there was no error in the admission of the evidence. As in *White,* the trial in this case predated *Sturdivant.* Therefore, we find no error. Also, we note that in cases where error has been found, the error has been harmless where there is a positive identification of the defendant, coupled with evidence of the complainant's opportunity to observe the defendant. *People v Sturdivant, supra. People v Sommerville, supra.* Such being the case here, any error would be harmless.

Finally, defendant claims that the prosecutor, in violation of the rule announced in *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), filed a supplemental information on April 25, 1979, charging the defendant as a habitual offender five days after his conviction for third-degree criminal sexual conduct was obtained when the prosecutor knew of the defendant's felony record prior to his conviction. Defendant was convicted as a habitual offender on October 2, 1979. Defendant contends that his habitual offender conviction must be reversed and his enhanced sentence must be vacated.

In *People v Young,* 410 Mich 363, 367; 301 NW2d 803 (1981), the Court found:

"We conclude that *People v Fountain* is applicable to cases pending on appeal on August 28, 1979, the date of decision in *People v Fountain,* provided the issue was raised during the pendency of the appeal; and in cases, the original trial or guilty plea hearing of which concluded 20 days after the date of decision in *People v Fountain.*"

Here, the defendant was convicted of third-degree criminal sexual conduct on April 20, 1979. At the trial on the habitual offender charge, the testimony established that when the defendant was arrested in October, 1978, the prosecutor was aware that defendant had numerous prior convictions. The language in *Young, supra,* says that the *Fountain* rule is applicable if the original trial or guilty plea (conviction of third-degree criminal sexual conduct) occurred within 20 days of the *Fountain* decision. That conviction was on April 20, 1979. *Fountain* does not apply.

Affirmed.